MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
 *jnadolenco@mayerbrown.com*
ARCHIS A. PARASHARAMI (SBN 321661)
 *aparasharami@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone: (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
General Motors LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAKOTAH MASSIE and NEIL MANGLANI, individually and by and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC and DECIBEL INSIGHT, INC,<br><br>Defendants. | Case No. 1:20-cv-01560-JLT<br><br>**DEFENDANT GENERAL MOTORS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Declaration of Jamie Burnell submitted concurrently herewith*]<br><br>Hearing Date:  May 25, 2021<br>Time:  9:30 a.m.<br><br>Magistrate Judge Jennifer L. Thurston |

1

**<u>NOTICE OF MOTION AND MOTION</u>**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on May 25, 2021, at 9:30 AM, or as soon thereafter as

4

this matter may be heard, in the Bakersfield Courtroom of the above-entitled Court located at 510

5

19th Street, Bakersfield, California, defendant General Motors LLC will and hereby does move the

6

Court for an order dismissing the First Amended Class Action Complaint (ECF No. 25) for lack of

7

personal jurisdiction or, in the alternative, transferring this action to the U.S. District Court for the

8

District of Delaware or the U.S. District Court for the Eastern District of Michigan.

9

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C. §

10

1404(a), and is based on the following grounds:

11

    1.    This Court lacks personal jurisdiction over the claims asserted against General

12

        Motors LLC, and so those claims should be dismissed pursuant to Fed. R. Civ. P.

13

        12(b)(2);

14

    2.    In the alternative, the action should be transferred to the U.S. District Court for the

15

        District of Delaware pursuant to 28 U.S.C. § 1404(a); and

16

    3.    In the alternative, the action should be transferred to the U.S. District Court for the

17

        Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

18

This motion is based on this notice, the accompanying memorandum of points and

19

authorities, the Declaration of Jamie Burnell, the pleadings and documents on file in this case, and

20

on such other written and oral argument as may be presented to the Court.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

LEGAL STANDARDS...................................................................................................... 2

ARGUMENT .................................................................................................................. 3

I.  THE COURT LACKS PERSONAL JURISDICTION OVER GM ................................... 3

    A.  GM Is Not Subject To General Jurisdiction In California ...................................... 4

    B.  GM Is Not Subject To Specific Jurisdiction In California...................................... 5

        1.  GM Did Not Purposefully Direct The Conduct Complained Of Toward California ....................................................................................... 6

        2.  Plaintiffs' Claims Do Not Arise Out Of Or Relate To GM's Alleged Forum-Related Activities ........................................................................... 11

II.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION ........ 13

    A.  If GM Is Not Dismissed, the Action Could Be Transferred to the District of Delaware ........................................................................................................ 14

    B.  Alternatively, the Action Should Be Transferred to the Eastern District of Michigan ........................................................................................................ 15

CONCLUSION ............................................................................................................. 17

1

2
### <u>TABLE OF AUTHORITIES</u>

3
**Page(s)**

4
**Cases**

5
*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
6
   751 F.3d 796 (7th Cir. 2014)...............................................................................8, 12

7
*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020)........................................................................ *passim*

8

9
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................2

10
*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
11
   874 F.3d 1064 (9th Cir. 2017)...................................................................6, 7, 9, 11

12
*be2 LLC v. Ivanov*,
   642 F.3d 555 (7th Cir. 2011)...................................................................................8

13
*Benjamin v. Bixby*,
14
   2009 WL 2171781 (E.D. Cal. July 21, 2009) ...................................................14, 16

15
*BNSF Railway Co. v. Tyrell*,
16
   137 S. Ct. 1549 (2017) .........................................................................................4, 5

17
*In re Boon Glob. Ltd.*,
   923 F.3d 643 (9th Cir. 2019)...................................................................................6

18
*Bradley v. T-Mobile US, Inc.*,
19
   2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) .........................................................8

20
*Calder v. Jones*,
21
   465 U.S. 783 (1984) ...............................................................................................7

22
*Chem Lab Prod., Inc. v. Stepanek*,
   554 F.2d 371 (9th Cir. 1977)...................................................................................3

23
*CollegeSource, Inc. v. AcademyOne, Inc.*,
24
   653 F.3d 1066 (9th Cir. 2011)..................................................................................5

25
*Daimler AG v. Bauman*,
26
   571 U.S. 117 (2014) .......................................................................................4, 9, 14

27
*Decter v. MOG Sales, LLC*,
   2006 WL 3703368 (E.D. Cal. Dec. 14, 2006).......................................................13

28

**TABLE OF AUTHORITIES —continued**

**Page(s)**

*Dinar Corp. Inc. v. Sterling Currency Grp., LLC*,
2014 WL 4072023 (D. Nev. Aug. 15, 2014) ...............................................................6

*E.E.O.C. v. United Airlines, Inc.*,
2009 WL 7323651 (N.D. Cal. Dec. 3, 2009) ............................................................17

*EFG Bank AG, Cayman Branch v. Lincoln Nat'l Life Ins. Co.*,
2017 WL 5635022 (C.D. Cal. June 8, 2017) ...........................................................14

*Electro Scan, Inc. v. Henrich*,
2019 WL 1299010 (E.D. Cal. Mar. 21, 2019) .............................................8, 11, 13

*FieldTurf USA, Inc. v. Blue Sky Int'l, Inc.*,
2012 WL 4510671 (E.D. Cal. Sept. 30, 2012).............................................15, 16, 17

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
141 S. Ct. 1017 (2021) .................................................................. *passim*

*Four Jays Music Co. v. Apple, Inc.*,
2020 WL 7862123 (C.D. Cal. Dec. 1, 2020) ...................................................14, 15

*Freeney v. Bank of America Corp.*,
2015 WL 12535021 (C.D. Cal. Nov. 19, 2015)...........................................................8

*Garza v. Confi-Chek, Inc.*,
2020 WL 243117 (E.D. Cal. Jan. 16, 2020)................................................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ...................................................................................................3

*Keeton v. Hustler Magazine*,
465 U.S. 770 (1984) ...................................................................................................7

*LA Printex v. M & A Imports Ltd.*,
2013 WL 12133690 (C.D. Cal. July 19, 2013) ..........................................................3

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) .............................................................................12

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)........................................................................ *passim*

*McGibney v. Retzlaff*,
2015 WL 3807671 (N.D. Cal. June 18, 2015) ............................................................8

**TABLE OF AUTHORITIES —continued**

Page(s)

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007)................................................11

*Metz v. U.S. Life Ins. Co. in City of New York*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009)..............................3, 16

*Microsoft Corp. v. Hagen*,
2010 WL 11527312 (E.D. Cal. Aug. 30, 2010) ........................13

*Naghavi v. Belter Health Measurement & Analysis Tech. Co.*,
2021 WL 461725 (S.D. Cal. Feb. 9, 2021) ...............................10

*Open Innovation, LLC v. Char-Broil*,
2011 WL 13217756 (C.D. Cal. Feb. 11, 2011).........................17

*Owens v. Natural Emphasis Ltd.*,
2020 WL 5289891 (C.D. Cal. June 11, 2020) .....................5, 13

*In re Packaged Seafood Products Antitrust Litig.*,
338 F. Supp.3d 1118 (S.D. Cal. 2018)......................................4

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)..............................................6, 7

*Perkins v. Benguet Consolidated Mining Co.*,
342 U.S. 437 (1952)................................................................4

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015)..................................................5

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015)..............................................2, 4

*Scanlon v. Curtis Int'l Ltd.*,
465 F. Supp. 3d 1054 (E.D. Cal. 2020).....................................3

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)................................................6, 7

*Star Fabrics, Inc. v. Ross Stores, Inc.*,
2017 WL 10439691 (C.D. Cal. Nov. 20, 2017).......................13

*Stohl v. Magic Mountain, LLC*,
2019 WL 498993 (E.D. Cal. Feb. 8, 2019) .........................5, 16

- iv -

**TABLE OF AUTHORITIES —continued**

**Page(s)**

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)...................................................................................................3, 6

*Taati v. Cigna Healthcare, Inc.*,
  2008 WL 11423917 (C.D. Cal. Sept. 19, 2008)........................................................................15

*Tolentino v. Mossman*,
  2008 WL 1787752 (E.D. Cal. Apr. 18, 2008)............................................................................15

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .....................................................................................................................3

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................................................5, 9

*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................................................................16

*Williams v. Yamaha Motor Co. Ltd.*,
  851 F.3d 1015 (9th Cir. 2017)......................................................................................................4

**Statutes**

28 U.S.C. § 1332 ...................................................................................................................14, 15

28 U.S.C. § 1391 .........................................................................................................................15

28 U.S.C. § 1404(a) .............................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ...........................................................................2, 3, 6, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

General Motors LLC operates websites that are accessible throughout the United States (and beyond), including by California residents. But that fact—which is true of nearly all websites—does not mean the Due Process Clause allows personal jurisdiction over GM everywhere in the country. And since Plaintiffs do not—and cannot—allege that GM's (or its co-defendant's) conduct was aimed at California in particular, the Court must dismiss this case, or in the alternative, transfer it to another jurisdiction.

Plaintiffs Dakotah Massie and Neil Manglani allege that GM operates some websites to market its products and that defendant Decibel Insight Inc. captures data from those websites' visitors through Session Replay software. But Plaintiffs' allegations are insufficient to show that the purported installation of that software on GM's websites is targeted to California residents in particular. They do not, and cannot, allege that the Defendants designed, developed, or operated GM's websites or the session replay software in California, or that Defendants otherwise engaged in any conduct in California related to the websites. And Plaintiffs do not, and cannot, allege that the Defendants are incorporated or have their principal places of business in California. Rather, the *only* connection between this case and California is that Plaintiffs themselves happen to be California residents. But that is not enough under Ninth Circuit precedent. Therefore, the Court should dismiss this action for lack of personal jurisdiction.

In the alternative, the Court should transfer this action under 28 U.S.C. § 1404(a). GM understands that Decibel intends to move to transfer this action to the U.S. District Court for the District of Delaware. GM agrees that transfer to the U.S. District Court for the District of Delaware is appropriate because general jurisdiction can be exercised over both defendants there, as they are each incorporated in Delaware. Alternatively, the Court should transfer this action to the Eastern District of Michigan—the district where GM is headquartered—as that district also would be convenient to the witnesses and the parties and serve the interests of justice.

## FACTUAL BACKGROUND

Plaintiffs allege that GM owns and operates websites for its Chevrolet, Buick, GMC, and

Cadillac brands. *See* First Amended Class Action Complaint ("FAC"), ECF No. 25, ¶¶ 1, 8. Plaintiffs further allege that GM partnered with Decibel to use Decibel's "Session Replay" software. *Id.* ¶¶ 19–20, 33-37. According to the Complaint, the Session Replay software captures website visitors' keystrokes, mouse clicks, names, zip codes, phone numbers, email addresses, IP addresses, and locations. *Id.* ¶ 44. Plaintiffs allege that GM captured their own information using Session Replay when they purportedly visited the Chevrolet website in August and September 2020. *Id.* ¶¶ 2, 4–5, 39–41. Plaintiffs allege that they are California residents and that they were physically located in California when they visited GM's nationally accessible Chevrolet website. *Id.* ¶¶ 4–5. Based on these allegations, Plaintiffs assert claims against both Defendants for violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 635, and for invasion of privacy under the California Constitution, and a claim against Decibel for violation of the Federal Wiretap Act, 18 U.S.C. § 2512. *See id.* ¶¶ 59–96.

Plaintiffs do not allege that the suit-related conduct of either defendant has anything to do with California in particular. GM is a limited liability company incorporated in Delaware, with its principal place of business in Michigan. *See* Declaration of Jamie Burnell ("Burnell Decl.") ¶ 3; FAC ¶ 6. Similarly, Plaintiffs allege that Decibel is a Delaware corporation with its principal place of business in Boston, Massachusetts. FAC ¶ 9. Plaintiffs do not allege that any of GM's conduct concerning the operation of its websites or the implementation and use of Decibel's Session Replay software occurred in California. *Id.* ¶¶ 55–56, 64, 71. Nor can they, as GM's license for the use of Decibel's Session Replay software has no connection to California, GM's marketing team is located in Michigan, and GM receives and views any Session Replays that are recorded on its websites in Michigan. *See* Burnell Decl. ¶¶ 6–10.

## LEGAL STANDARDS

A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In opposing such a motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). Allegations to support the assertion of personal jurisdiction—no less than allegations to state a claim—"must comport with the pleading standard as clarified in *Ashcroft v.*

1   *Iqbal*, 556 U.S. 662 (2009)" to survive dismissal. *LA Printex v. M & A Imports Ltd.*, 2013 WL

2   12133690, at *1 (C.D. Cal. July 19, 2013) (citations omitted). Thus, "mere 'bare bones' assertions

3   of minimum contacts with the forum or legal conclusions unsupported by specific factual

4   allegations will not satisfy a plaintiff's pleading burden" to avoid dismissal for lack of personal

5   jurisdiction under Rule 12(b)(2). *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). "When

6   a defendant's motion to dismiss is to be decided on the pleadings, affidavits, and discovery

7   materials," it is the plaintiff's burden to "make a *prima facie* showing that personal jurisdiction

8   exists in order for the action to proceed." *Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1060

9   (E.D. Cal. 2020). "The mere allegations of a complaint, when contradicted by affidavits, are not

10  enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prod., Inc. v.*

11  *Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977).

12      In addition, under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses,

13  in the interests of justice, a district court may transfer any civil action to any other district or division

14  where it might have been brought . . . ." The primary purpose of this statute is to "prevent the waste

15  'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary

16  inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Courts use a two-

17  step process to decide a transfer motion under § 1404. First, the court looks at whether the case

18  could have been brought in the transferee district. *See Metz v. U.S. Life Ins. Co. in City of New*

19  *York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). Second, the court must evaluate the

20  convenience to the parties, the convenience to the witnesses, and the interests of justice. *Id.*

21  **ARGUMENT**

22  **I.    THE COURT LACKS PERSONAL JURISDICTION OVER GM**

23      There are two forms of personal jurisdiction: (i) "general jurisdiction," which applies where

24  a defendant is so "at home" in the forum that a court may adjudicate any claims against the

25  defendant arising from anywhere in the world; and (ii) "specific jurisdiction," which allows a court

26  to adjudicate claims that arise out of or relate to the defendant's suit-related contacts with the forum

27  state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Neither form

28  of personal jurisdiction over GM exists here.

### A.     GM Is Not Subject To General Jurisdiction In California

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (same). "A corporation's 'continuous activity of some sorts within a state is generally not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* Rather, "the **place of incorporation** and **principal place of business** are 'paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (emphasis added). These principles apply to limited liability company defendants as well as corporations. *See, e.g.*, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (finding foreign LLC is not subject to general jurisdiction in Oregon under *Goodyear/Daimler* test); *In re Packaged Seafood Products Antitrust Litig.*, 338 F. Supp.3d 1118, 1139 n.14 (S.D. Cal. 2018) (explaining that "courts apply *Daimler* to non-corporate business entities" and collecting cases).

Here, Plaintiffs admit that GM is a Delaware limited liability company with its principal place of business in Detroit, Michigan. FAC ¶ 6; *see also* Burnell Decl. ¶ 3. Plaintiffs do not, and cannot, allege the type of "constant and pervasive" contacts that are required for this Court to conclude that this is an "exceptional" case in which general jurisdiction is nevertheless present. *Ranza*, 793 F.3d at 1069–70.[1] Plaintiffs allege that "GM does business throughout California" (FAC ¶ 7), but the Supreme Court has expressly rejected "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" holding that "[t]hat formulation . . . is unacceptably grasping." 571 U.S. at 138 (citation

---

[1]     The Supreme Court has found only one example of an "exceptional case" where general jurisdiction is appropriate in a forum that is not the defendant's place of incorporation or principal place of business. In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the defendant's usual home (the Philippines) had been invaded and occupied during World War II, and its president thereafter directed all corporate activity from Ohio, making Ohio the company's "principal, if temporary, place of business," *Daimler*, 571 U.S. at 130, and, "given the wartime circumstances," a "surrogate for the place of incorporation or head office," *id.* at 130 n.8 (quotation marks omitted); *accord BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017).

omitted); *see also Ford Motor Co.*, 141 S. Ct. at 1024 ("[G]eneral jurisdiction over Ford (as all parties agree) attaches in Delaware and Michigan—not in Montana and Minnesota."). Likewise, Plaintiffs' allegations that GM owns and operates websites accessed by California residents (FAC ¶¶ 1, 4–5) are not enough to establish general jurisdiction. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (the purchase and sale of products in the forum state, maintenance of business relationships in the forum, and operation of a "'highly interactive' website" accessible to forum residents is insufficient to support general jurisdiction); *Owens v. Natural Emphasis Ltd.*, 2020 WL 5289891, at *3 (C.D. Cal. June 11, 2020) (allegations that defendant maintains "an active website . . . through which California residents can purchase the Michigan Defendants' products," are insufficient to establish general jurisdiction).[2]

Put simply, "'[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549, 1559 (2017) (quoting *Daimler*, 571 U.S. at 139 n.20) (alteration in original). Thus, Plaintiffs have not established that GM is subject to general jurisdiction here.

## B.  GM Is Not Subject To Specific Jurisdiction In California

For specific jurisdiction to exist, "the ***defendant's*** suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). The "specific jurisdiction inquiry is limited to the defendant's suit-related conduct" *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015)  (internal quotation marks omitted)). The Ninth Circuit applies a three-part test to determine whether a court has specific jurisdiction over a defendant: (1) the non-resident defendant must purposefully direct his activities toward, or purposefully avail himself of, the forum; (2) the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be

---

[2]     *See also, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075–76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result"); *Stohl v. Magic Mountain, LLC*, 2019 WL 498993, at *5 (E.D. Cal. Feb. 8, 2019) (allegations that the defendant has "a nationwide advertising presence and maintains a website and social media platforms that are accessible" in the forum state are insufficient to establish general jurisdiction).

reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiffs bear the burden of establishing the first two prongs of this test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Plaintiffs do not, and cannot, meet their burden to establish specific personal jurisdiction.

### 1.    GM Did Not Purposefully Direct The Conduct Complained Of Toward California

Depending on whether the claims alleged sound in contract or tort, a plaintiff may satisfy the first element of the Ninth Circuit's test by demonstrating that the defendant "has either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at 802 (explaining that, though courts "often use the phrase 'purposeful availment,' in shorthand fashion, . . .availment and direction are, in fact, two distinct concepts"). As Plaintiffs' claims sound in tort based on internet-related conduct, the purposeful direction test applies here. *Axiom Foods*, 874 F.3d at 1069; *Mavrix Photo*, 647 F.3d at 1228; *see also, e.g.*, *Graham v. Noom*, No. 3:20-cv-06903-LB, Dkt. No. 51 at 15 (N.D. Cal. April 8, 2021) (applying the purposeful-direction test to claims under CIPA and for invasion of privacy under California's Constitution); *Garza v. Confi-Chek, Inc.*, 2020 WL 243117, at *4 (E.D. Cal. Jan. 16, 2020) (explaining that claims akin to state-law invasion of privacy "sound[] in tort" such that "the court follows a purposeful direction analysis"); *Dinar Corp. Inc. v. Sterling Currency Grp., LLC*, 2014 WL 4072023, at *4 (D. Nev. Aug. 15, 2014) ("[I]n the context of alleged tortious internet conduct, courts are to inquire whether a defendant 'purposefully directed his activities' at the forum state.").

Plaintiffs, however, ignore this well-established rule and allege that this Court has personal jurisdiction because "Defendants have purposefully availed themselves of the laws and benefits of doing business in this State." FAC ¶ 13. This "'bare bones' assertion[]" cannot "satisfy a plaintiff's pleading burden" under Rule 12(b)(2). *Swartz*, 476 F.3d at 766; *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (stating that a plaintiff "cannot simply rest on the bare allegations of its complaint" to establish personal jurisdiction). In addition, as explained above, Plaintiffs must

1  establish purposeful direction.[3]

2  To establish purposeful direction, the plaintiff must satisfy the *Calder* effects test: "[T]he

3  defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum

4  state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely

5  to be suffered in the forum state." *Pebble Beach Co.*, 453 F.3d at 1155; *Calder v. Jones*, 465 U.S.

6  783 (1984). The "determinative question" is therefore "whether [GM's] conduct was expressly

7  aimed" at California. *Pebble Beach*, 453 F.3d at 1155. Plaintiffs must show that California was a

8  "focal point both of [GM's actions] and of the harm suffered." *Axiom Foods*, 874 F.3d at 1071

9  (quoting *Walden*, 571 U.S. at 287). And where, as here, the defendants' alleged suit-related contacts

10 occurred through a website, the Ninth Circuit has considered several factors in determining whether

11 a nonresident has "expressly aimed" at California, including "the interactivity of the defendant's

12 website, the geographic scope of the defendant's commercial ambitions, and whether the defendant

13 individually targeted a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229

14 (internal quotation marks omitted).

15 Plaintiffs cannot establish that GM's alleged intentional acts—the installation of Session

16 Replay software and purported interception of website users' electronic communications on GM's

17 websites, FAC ¶ 15—were expressly aimed at California. *See Schwarzenegger*, 374 F.3d at 806 (a

18 plaintiff must show that the defendant "'expressly aimed' *its intentional act* . . . at California");

19 *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020) (same). GM's license for the

---

20 [3]      The Supreme Court's *Ford* decision does not displace the Ninth Circuit's distinction
21 between purposeful availment and purposeful direction, as the distinction was not at issue. The
   Court's use of the term "purposeful availment" (*Ford Motor Co.*, 141 S. Ct. at 1024) is no different
22 than the Ninth Circuit's own "use [of] the phrase 'purposeful availment,' in shorthand fashion, to
   include both purposeful availment and purposeful direction" (*Schwarzenegger*, 374 F.3d at 802).
23 Indeed, the *Ford* court described the purposeful availment standard in part by citing (*Ford Motor
   Co.*, 141 S. Ct. at 1025) *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984)—the very intentional
24 tort case cited by *Schwarzenegger* for the purposeful direction test (374 F.3d at 803).

25      In all events, the purposeful availment standard is not satisfied here either. "[T]he conduct
26 of which [Plaintiffs] complain[]," *Schwarzenegger*, 374 F.3d at 803, is GM's alleged installation
   and use of Decibel's Session Replay software. Plaintiffs do not (and could not) allege that GM
27 received any "benefit, privilege, or protection from California in connection with" the alleged
   installation or use of Session Replay on GM's websites. *Id.* "[T]he traditional quid pro quo
28 justification for finding purposeful availment thus does not apply." *Id.*

use of Decibel's Session Replay software has no connection to California, and GM's marketing team—which operates GM's websites and receives and views any Session Replay recordings—is located in Michigan. *See* Burnell Decl. ¶¶ 6–10. GM's websites are accessible throughout the United States, not just California. Burnell Decl. ¶ 12; FAC ¶ 17. Plaintiffs do not (and cannot) allege any intentional conduct designed specifically to target and attract Californians (rather than customers nationwide) to GM's websites. *See* Burnell Decl. ¶ 12. Nor does any geographic criterion affect which website sessions are recorded. *See id. ¶* 8. GM is concerned with improving its websites' design and user experience, not with any visitor's geographic location. Burnell Decl. ¶ 10. "Without facts showing [GM] specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction." *Electro Scan, Inc. v. Henrich*, 2019 WL 1299010, at *5 (E.D. Cal. Mar. 21, 2019)); *see AMA Multimedia*, 970 F.3d at 1212 (finding no express aiming where plaintiff had not shown that the defendant "was motivated by a desire to appeal to the . . . market [in the forum] or generate more . . . users [in the forum], as opposed to more users globally"); *see also Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924, at *15 (N.D. Cal. Mar. 13, 2020) ("[M]ost courts have concluded that a nationwide advertising campaign is not 'expressly aimed' to each state in which the advertisement appears").

In other words, the mere interactivity of GM's website is not enough. As the Seventh Circuit has put it, "[t]he interactivity of a website is . . . a poor proxy for adequate in-state contacts" and "should not open a defendant up to personal jurisdiction in every spot on the planet where that [] website is accessible." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."); *see also Freeney v. Bank of America Corp.*, 2015 WL 12535021, at *46 (C.D. Cal. Nov. 19, 2015) (citing *Advanced Tactical* affirmatively and holding allegations that defendant was "aware that [plaintiff] resided in California" and "would feel the effects of the fraudulent scheme" in California "is insufficient to demonstrate that the court can exercise personal

jurisdiction"); *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (citing *Advanced Tactical* affirmatively and finding no specific jurisdiction where "all of Defendant's alleged misconduct occurred outside of California and in cyberspace"). Thus, there is no basis to conclude that GM has "expressly aimed" the operation of its websites, let alone its use of Session Replay, at California in a manner sufficient to confer jurisdiction.

Plaintiffs' allegations of purposeful direction are based on theories of personal jurisdiction that have been firmly rejected by the U.S. Supreme Court and the Ninth Circuit. Plaintiffs allege that specific personal jurisdiction exists because "California is the largest market in the United States" and Californians "form a significant portion of GM's customer base." FAC ¶ 15. But of course California, the state with the largest population and economy in the Nation, would form a significant portion of the customer base of *any* entity that sells products nationwide. Plaintiffs essentially ask the Court to establish general jurisdiction in California over GM and all other national retailers. This would directly contradict the Supreme Court's holding in *Daimler*. 571 U.S. at 137–38 (holding "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" would be "unacceptably grasping").

Plaintiffs then allege that it was "foreseeable" that GM's use of Session Replay software "would harm Plaintiffs and similarly-situated individuals, and that at least some of this harm would occur in California" because GM "targeted [it]s wrongful conduct at customers" and "knew many customers" reside in California. FAC ¶ 15. In an effort to shore up this theory, Plaintiffs point to the websites' "Privacy Policies," which include, among other national and international policies, a California privacy statement in compliance with the California Consumer Privacy Act. FAC ¶ 16; https://www.gm.com/privacy-statement.html. This shows only that GM knew that its websites were accessible to residents of California (just like residents of every other state), and so could foresee that some website users might reside in California. But the Supreme Court in *Walden* held that mere foreseeability that someone may be harmed in the forum state does not satisfy the effects test. *Walden*, 571 U.S. at 289; *see also AMA Multimedia, LLC*, 970 F.3d at 1210 (after *Walden*, "[a]lthough [the defendant] may have foreseen that [its website] would attract a substantial number

of viewers in the United States, this alone does not support a finding of express aiming" at the United States); *Axiom Foods*, 874 F.3d at 1069–70 (explaining that, after *Walden*, the allegation that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state" is insufficient to establish specific personal jurisdiction); *see also Naghavi v. Belter Health Measurement & Analysis Tech. Co.*, 2021 WL 461725, at *5 (S.D. Cal. Feb. 9, 2021) ("[A]n assertion that it was foreseeable that third-parties would suffer harm in the forum – like an assertion that it was foreseeable that plaintiffs would suffer harm in the forum – by itself is insufficient to support specific personal jurisdiction over a defendant.").

Finally, Plaintiffs' allegation that, "[b]ecause of the substantial California market, Defendants anticipated, desired, and achieved a substantial California base," FAC ¶ 17, does not establish specific personal jurisdiction. Plaintiffs' allegation clearly references the Ninth Circuit's conclusion in *Mavrix*, but they ignore the facts that led to that result. In *Mavrix*, the defendant posted copyrighted photos of celebrities with connections to California on its website devoted to the "California-centered celebrity and entertainment industries." *Id.* at 1230. In addition, the defendant's website made money from "third-party advertisements for jobs, hotels, and vacations in California" pursuant to an advertising structure that earned the defendant more money the more hits that it received. *Id.* at 1222. Thus, the defendant targeted Californians, knowing that it stood to make more money with its website the more California viewers it drew there. *Id.* The Court concluded that holding the defendant "answerable in a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians" did not violate due process. *Mavrix*, 647 F.3d at 1230.

This case, however, "differs from *Mavrix* in several important respects," for reasons similar to those explained in the Ninth Circuit's subsequent decision in *AMA Multimedia*, 970 F.3d at 1209–12. First, the Court in *Mavrix* concluded that the defendant's website intentionally appealed to California viewers in particular "based on the website's subject matter," California celebrities, which had "a specific focus" on California. *Mavrix*, 647 F.3d at 1230. But here, similar to *AMA Multimedia*, GM's websites "lack[] a forum specific focus," as the market for GM's automobiles is nationwide. *AMA Multimedia*, 970 F.3d at 1210. In addition, in *Mavrix* the defendant's website

- 10 -

1   deliberately profited from California-based website traffic because the website used a particular

2   advertising structure, under which "the more California viewers [the defendant] could bring to its

3   website, the more money it would make from its advertisements directed to Californians." *Id.*

4   (describing *Mavrix*, 647 F.3d at 1230). There is no similar advertising structure here, and the fact

5   that some visitors to GM's websites are from California "does not establish that [GM] tailored the

6   website to attract [California] traffic." *Id.* Moreover, any profits that GM receives from California

7   website visitors have nothing to do with GM's alleged use of Session Replay software. And in any

8   event, those profits result from those "*users* who access the site rather than from [GM's] targeting

9   of forum users who access the site," and so they do not support personal jurisdiction. *Id.* at 1211

10  n.7.

### 2.      Plaintiffs' Claims Do Not Arise Out Of Or Relate To GM's Alleged Forum-Related Activities

12      Likewise, Plaintiffs do not, and cannot, allege any facts suggesting that their claims "arise

13  out of or relate to" GM's conduct in California. *See Ford Motor Co.*, 141 S. Ct. at 1025; *Axiom*

14  *Foods, Inc.*, 874 F.3d at 1068; *see also, e.g.*, *Electro Scan*, 2019 WL 1299010, at *5 (dismissing

15  claims for lack of personal jurisdiction where plaintiffs did not allege any connection between

16  defendants' California activities and their alleged harm). To satisfy this requirement, "there must

17  be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or

18  occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

19  *Bristol-Myers*, 137 S. Ct. 1773, 1780. Although "but-for causation" is no longer required to satisfy

20  this element,[4] "the phrase 'relate to'" continues to "incorporate[] real limits, as it must to adequately

21  protect defendants foreign to a forum." *Ford Motor Co.*, 141 S. Ct. at 1026.

22      Plaintiffs do not even attempt to plead this requirement beyond the conclusory allegation

23  that "Plaintiffs' claims arise out of each of the Defendants' forum-related activities." FAC ¶ 13.

24  Plaintiffs might try to point to GM's California sales as sufficient forum-related activity, but—

25  unlike the car accident-related claims in *Ford*—their claims do not "arise from or relate to" such

---

[4]      The Ninth Circuit previously held that "[i]n determining whether [plaintiff's] claims arise out of [defendant's] forum-related conduct, 'the Ninth Circuit follows the 'but for' test.'" *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir.2001)).

1   sales. Indeed, neither Plaintiff even made a purchase on GM's websites. FAC ¶¶ 39–40 (noting

2   neither Plaintiff made a purchase). Plaintiffs' claims arise from and relate to session recording

3   software allegedly used on GM's websites nationwide—software that GM licensed and used

4   outside California. *See Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir.

5   2018). And for the reasons previously explained, GM's operation of broadly-accessible websites

6   does not constitute the type of minimum contacts with the forum needed for specific personal

7   jurisdiction. "If [GM] can be haled into California merely on the basis of its universally accessible

8   website, then, under [Plaintiffs'] proposed rule, it can be haled into every state, and respectively,

9   every online advertiser worldwide can be haled into California." *Id.*; *cf. Advanced Tactical*, 751

10  F.3d at 803 ("if having an interactive website were enough" to confer jurisdiction where the conduct

11  complained of "has nothing to do with interactivity," then "there is no limiting principle—a plaintiff

12  could sue everywhere," in violation of the due process limits on personal jurisdiction announced

13  by the Supreme Court).

14      GM expects that plaintiffs will rely heavily on the Supreme Court's recent decision in *Ford*,

15  but *Ford* does not change this analysis. That case stemmed from two accidents in Montana and

16  Minnesota involving Ford's allegedly defective Explorer and Crown Victoria vehicles. The victims

17  were residents of Montana and Minnesota, respectively. The particular cars themselves involved in

18  the crash were not first sold, manufactured, nor designed in Montana or Minnesota. But the

19  Supreme Court found significant that Ford regularly conducts business in Montana and Minnesota

20  and "urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times)

21  Explorers and Crown Victorias"—the car models involved in the underlying accidents. *Ford Motor*

22  *Co.*, 141 S. Ct. at 1028. The Supreme Court found a sufficient relationship between Ford's contacts

23  with the state and plaintiff's product liability claims because (1) each plaintiff's suit arises from a

24  car accident in either Montana or Minnesota; (2) each complaint alleges that a defective Crown

25  Victoria or Explorer vehicle caused the crash and resulting harm; and (3) Ford advertised, sold, and

26  serviced Explorer and Crown Victoria vehicles in both States for many years. *Id.* That is, "when a

27  company like Ford serves a market for a product in a State and ***that product*** causes injury in the

28  State to one of its residents, the State's courts may entertain the resulting suit." *Ford Motor Co.*,

1  141 S. Ct. at 1022 (emphasis added).

2  This case is different. The plaintiffs in *Ford* alleged product liability claims based on

3  allegedly defective vehicles that Ford had urged Montana and Minnesota residents to buy and that

4  then caused injury in the forum state. Critically, although GM seeks to serve the market for

5  automobiles in California, the sales of those automobiles, unlike in *Ford*, are not related to this suit.

6  Plaintiffs here allege claims for invasion of privacy based on software used to improve user

7  experience and functionality on a nationally accessible website that is operated from Michigan. The

8  relevant events and alleged injury all occurred online. Indeed, the Supreme Court expressly

9  ***distinguished*** the personal injury case before it, which involved physical product sales into the

10  forum, and resulting malfunction and injury there, from "internet transactions" and other cases

11  "present[ing] the very different questions whether and how a defendant's virtual 'presence' and

12  conduct translate into 'contacts' with a particular State"—questions that the Supreme Court

13  expressly said "we do not here consider." *Ford Motor Co.*, 141 S. Ct. at 1028 n.4. Thus, this suit

14  does not arise out of or relate to GM's California contacts.

15  In short, Plaintiffs have not established that this Court has specific jurisdiction over GM.

16  Because neither specific nor general jurisdiction exists, the Court should dismiss Plaintiffs' claims

17  against GM for lack of personal jurisdiction. *See, e.g.*, *Owens*, 2020 WL 5289891, at *5; *Electro*

18  *Scan, Inc*., 2019 WL 1299010, at *7.

19  **II.     IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION**

20  In the alternative—and even if the Court finds personal jurisdiction proper in this District—

21  the Court should transfer the action pursuant to 28 U.S.C. § 1404(a), which authorizes a district

22  court to transfer a civil action to any other district "where it might have been brought" for "the

23  convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a).[5] Several

24  ──────────

[5]       The Court can transfer the case under Section 1404 even if personal jurisdiction did exist

25  over Defendants in this District (it does not). In any event, the Court need not determine whether
personal jurisdiction over GM exists in this District before transferring the case under Section 1404.

26  *See, e.g.*, *Star Fabrics, Inc. v. Ross Stores, Inc.*, 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20,
2017) (granting motion to transfer under Section 1404 and denying as moot defendant's motion to

27  dismiss for lack of personal jurisdiction and plaintiff's request for jurisdictional discovery);
*Microsoft Corp. v. Hagen*, 2010 WL 11527312, at *1–2 (E.D. Cal. Aug. 30, 2010) ("The court need

28  not determine whether there is personal jurisdiction or proper venue in the Eastern District of

1    factors are relevant to this analysis, including: (1) the plaintiffs' choice of forum; (2) the respective

2    parties' contacts with the forum; (3) the contacts relating to the plaintiffs' claims for relief in the

3    chosen forum; (4) the ease of access to sources of proof; (5) familiarity of each forum with

4    applicable law; and (6) the availability of compulsory process to compel attendance of unwilling

5    non-party witnesses. *EFG Bank AG, Cayman Branch v. Lincoln Nat'l Life Ins. Co.*, 2017 WL

6    5635022, at *2 (C.D. Cal. June 8, 2017) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-

7    99 (9th Cir. 2000)); *Benjamin v. Bixby*, 2009 WL 2171781, at *8 (E.D. Cal. July 21, 2009). Here,

8    the Court should transfer the action to either the U.S. District Court for the District of Delaware or

9    the U.S. District Court for the Eastern District of Michigan.

10       **A.    If GM Is Not Dismissed, the Action Could Be Transferred to the District of
              Delaware**

11       Both GM and Decibel are incorporated in Delaware. *See* FAC ¶¶ 6, 9. Therefore, both

12   defendants are subject to general jurisdiction in Delaware. *See Daimler*, 571 U.S. at 137. Indeed,

13   because GM's and Decibel's principal places of business are in different states (FAC ¶¶ 6, 9), the

14   District of Delaware is the *only* federal court that can exercise general jurisdiction over both

15   defendants. *See Daimler*, 571 U.S. 137 (holding a company's place of incorporation generally

16   provides a proper basis for general jurisdiction). Moreover, the District of Delaware would have

17   subject matter jurisdiction to hear the action under 28 U.S.C. § 1332(d)(2)(A). Thus, that district is

18   unquestionably one "where [the action] might have been brought." 28 U.S.C. § 1404(a).

19       Further, Delaware is otherwise an appropriate forum because it is convenient to the parties

20   and witnesses and is in the interests of justice. Delaware is about 1600 miles closer to Michigan

21   than the Eastern District of California is. And Michigan is where, as explained below, the suit-

22   related conduct took place and the bulk of witnesses and documents are likely to be located. *See*

23   *Four Jays Music Co. v. Apple, Inc.*, 2020 WL 7862123, at *4 (C.D. Cal. Dec. 1, 2020) (holding the

24   convenience of the parties and witnesses favored transfer to the forum closest to where defendants'

25   witnesses were located). In addition, transfer to Delaware is in the interests of justice because it is

26   _____

27   California" because "[t]ransfer would be convenient for the parties and is in the interest of justice");
     *Decter v. MOG Sales, LLC*, 2006 WL 3703368, at *3 (E.D. Cal. Dec. 14, 2006) (granting motion

28   to transfer under Section 1404 and dismissing motion to dismiss for lack of personal jurisdiction as
     moot).

the only district where personal jurisdiction is undisputedly present as to both defendants. *See, e.g.*, *Id.* at \*5 ("Courts have repeatedly held that a change of venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice." (citation omitted)); *FieldTurf USA, Inc. v. Blue Sky Int'l, Inc.*, 2012 WL 4510671, at \*3 (E.D. Cal. Sept. 30, 2012) ("Courts have found sufficient support for transfer where jurisdiction and venue were certain in the receiving court and the determination of whether the case was properly brought in the transferor forum would have necessitated a great expenditure of court and party resources, time, and effort."); *Taati v. Cigna Healthcare, Inc.*, 2008 WL 11423917, at \*7 n.34 (C.D. Cal. Sept. 19, 2008) (acknowledging courts' "preference for litigating cases in forums where all defendants are subject to personal jurisdiction"). Accordingly, as an alternative to dismissing this case for lack of personal jurisdiction, the Court should transfer the case to the U.S. District Court for the District of Delaware.

## B. Alternatively, the Action Should Be Transferred to the Eastern District of Michigan

If the Court is not inclined to transfer this action to the District of Delaware, it could transfer the action to the U.S. District Court for the Eastern District of Michigan. GM's principal place of business is in Detroit, and GM is therefore subject to personal jurisdiction in that district. *See* 28 U.S.C. § 1391(b)(1).[6] The Eastern District of Michigan also would have subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Finally, venue would be proper in the Eastern District of Michigan, as the websites that constitute "a substantial part of the events or omissions giving rise to the claim" are operated from GM's Detroit offices. 28 U.S.C. § 1391(b)(2); Burnell Decl. ¶ 6.

Transfer to the Eastern District of Michigan would be convenient for the witnesses in this case. *See, e.g.*, *Tolentino v. Mossman*, 2008 WL 1787752, at \*1 (E.D. Cal. Apr. 18, 2008) (relative convenience to the witnesses "is often the most important factor" in the § 1404(a) analysis) (quoting

---

[6] The Court can avoid the issue of whether a court in Michigan can exercise personal jurisdiction over Decibel as well as GM by (1) dismissing the lawsuit because courts in California cannot exercise personal jurisdiction over either defendant or (2) transferring the case to Delaware, where general jurisdiction over both defendants is undisputed. But if the Court does reach the issue and concludes that Decibel (like GM) is subject to personal jurisdiction in Michigan, then it has the power to transfer the case to the Eastern District of Michigan under Section 1404.

1    *A.J. Indus., Inc. v. U.S. Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)); *Metz v. U.S. Life Ins. Co.* NY,

2    674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (same). Key decisions related to GM's websites and

3    the use of Decibel's Session Replay software took place in Michigan, where GM is headquartered

4    and where its marketing department is located. *See* Burnell Decl. ¶¶ 3, 6, 10. The overwhelming

5    majority of GM employees who may be subject to deposition or other discovery live and work in

6    or near Detroit, including the key members of GM's marketing team. *See* Burnell Decl. ¶ 6, 10. *See*

7    *Benjamin*, 2009 WL 2171781, at *9 (finding the convenience of the witnesses favored transfer

8    where defendants "indicated that all activities related to" the website at issue had "taken place in

9    Michigan"). Consequently, GM believes that documentary evidence pertinent to the case will be

10   found in Michigan. *See id.* (finding relevant documentary evidence was likely to be in Michigan,

11   where "all activities relative to the [defendant's] website . . . reportedly have been conducted"); *see*

12   *also* Burnell Decl. ¶ 11.

13       The Eastern District of Michigan also would be convenient for the parties. Again, the central

14   party defendant, GM, has its principal place of business in Michigan. While the named plaintiffs

15   reside in California, their choice of forum has less weight here because the operative facts of the

16   action—the operation of GM's websites and the use of Decibel's technology—did not occur in

17   California, and this forum has no special interest in adjudicating a matter concerning websites that

18   are accessible nationwide. *Stohl v. Magic Mountain, LLC*, 2019 WL 498993, at *6 (E.D. Cal. Feb.

19   8, 2019) (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)); *FieldTurf*

20   *USA, Inc.*, 2012 WL 4510671, at *5.[7] To the contrary, the Eastern District of Michigan has the

21   greater interest, as all of the alleged decisions giving rise to the action occurred there. *See, e.g.*,

22   *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1110 (N.D. Cal. 2001) (concluding that the forum in

23   which the "events and practices" complained of occurred had a greater interest in hearing the suit

24   than the forum in which the parties resided).

25       Finally, transfer to the Eastern District of Michigan would be consistent with the interests

26   of justice. Although "this court may be more familiar with California law, it is a federal court and

27   _____

28   [7]      Of course, if the Court agrees that personal jurisdiction is lacking in California, Plaintiffs' choice of venue is entitled to no deference. *Benjamin*, 2009 WL 2171781, at *8.

- 16 -

1   no more competent than the Eastern District of [Michigan] to apply the uncomplicated laws relied

2   on in this action." *FieldTurf USA, Inc.*, 2012 WL 4510671, at *5. In addition, the difference in costs

3   of litigation weighs in favor of transfer. *Id.* Litigating in California will be more financially

4   burdensome than in Michigan because GM's employees, potential witnesses, documents, and

5   offices are located in Michigan. Litigating in California would result in a higher cost of

6   transportation, and higher costs associated with a more substantial interruption of GM's business

7   operations. For this same reason, ease of access to sources of proof favors transfer. *Id.* Courts

8   routinely find transfer to be in the interests of justice in these circumstances. *See, e.g.*, *E.E.O.C. v.*

9   *United Airlines, Inc.*, 2009 WL 7323651, at *5 (N.D. Cal. Dec. 3, 2009) (holding the "interests of

10  justice" weigh in favor of transfer where "considerable time and resources will be expended in

11  transporting witnesses and documents from [the defendant's] headquarters in Illinois" if the case

12  continued in California); *Open Innovation, LLC v. Char-Broil*, 2011 WL 13217756, at *3 (C.D.

13  Cal. Feb. 11, 2011) (holding the interests of justice weighed in favor of transfer to Georgia where

14  defendants were headquartered and had their principal place of business in Georgia, employees

15  with relevant knowledge worked in Georgia, and defendants' documents were located in Georgia).

16                                    **CONCLUSION**

17          For the foregoing reasons, the Court should dismiss the claims asserted in the complaint

18  against GM for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, transfer

19  the action to the District of Delaware or the Eastern District of Michigan pursuant to 28 U.S.C.

20  § 1404(a).

21   Dated: April 12, 2021                      Respectfully submitted,

22                                              MAYER BROWN LLP

23                                              By: */s/ John Nadolenco*
24                                                  John Nadolenco

25                                              *Attorneys for Defendant*
                                                *General Motors LLC*
26

27

28